## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| RICHARD HORNSBY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-1472 (RC) |
| | : | | |
| v. | : | Re Document No.: | 8 |
| | : | | |
| SANDRA L. THOMPSON, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### Granting in Part and Denying in Part Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment; and Transferring to the Federal Circuit

## I. INTRODUCTION

Plaintiff Richard Hornsby ("Plaintiff") brings the instant action against Sandra L.

Thompson ("Defendant"), the Acting Director of the Federal Housing Finance Agency ("FHFA"

or "the agency"), and raises a number of claims arising out of the termination of his employment

as Chief Operating Officer of the FHFA and his subsequent appeal of that termination to the

United States Merit Systems Protection Board ("MSPB").  Specifically, Plaintiff alleges that: (1)

in terminating his employment, Defendant retaliated against him in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, and the Civil Service Reform Act ("CSRA"), 5

U.S.C. § 2302(b); (2) the Administrative Judge ("AJ") and MSPB adjudicating Plaintiff's appeal

failed to provide him with interim relief, in violation of 5 U.S.C. § 7701(b)(2)(A); and (3) the

MSPB's affirmation of the agency's decision to terminate Plaintiff's employment was arbitrary,

capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in

accordance with the law.  Compl. ¶¶ 44–48, ECF No. 1.  Defendant has filed a motion to dismiss

or, in the alternative, a motion for summary judgment, contending that the Court must first

dismiss Plaintiff's retaliation claim for failure to exhaust administrative remedies and then dismiss Plaintiff's remaining claims for lack of subject-matter jurisdiction.  Mem. in Supp. Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Mem.") at 1–2, ECF No. 8-1. For the reasons explained below, the Court grants Defendant's motion insofar as it seeks dismissal of Plaintiff's retaliation claim, but denies Defendant's request that Plaintiff's remaining claims be dismissed and instead transfers those claims to the Federal Circuit.

## II.  BACKGROUND

### A.  Statutory Framework

The CSRA "provides a grievance process and remedies to an employee who believes that he is the victim of a prohibited personnel practice," *Wilson v. U.S. Dep't of Transp.*, 759 F. Supp. 2d 55, 63 (D.D.C. 2011), whereas Title VII "prohibits the federal government from . . . retaliating against employees for engaging in activity protected by Title VII," *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008).  "When an employee believes he is the victim of a prohibited practice that was motivated by discrimination in violation of Title VII, the employee can file a 'mixed case,' *i.e.* one alleging violation of both CSRA and Title VII."  *Wilson*, 759 F. Supp. 2d at 63 (D.D.C. 2011).  "Government employees alleging discrimination in violation of Title VII or challenging personnel practices prohibited by the Civil Service Reform Act must exhaust administrative remedies before bringing their claims to federal court."  *Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012) (citations omitted).  Those who file mixed cases can exhaust administrative remedies by either "(1) fil[ing] a discrimination complaint with the agency through the agency's Equal Employment Opportunity ('EEO') Office, or (2) fil[ing] an appeal directly with the MSPB."  *Rodgers v. Perez*, 139 F. Supp. 3d 67, 71 (D.D.C. 2015) (citing 29 C.F.R. § 1614.302(a); 5 C.F.R. § 1201.154(a)); *see also Hamilton*, 666 F.3d at 1349–50

("Because Hamilton's 2002 detail claim presented a 'mixed case,' involving charges of both discrimination and prohibited personnel practices, Hamilton could have exhausted his administrative remedies by presenting his claim either to the IRS's EEO office or to the Merit Systems Protection Board."); *accord Morris v. Jackson*, 842 F. Supp. 2d 171, 177 (D.D.C. 2012), *aff'd sub nom. Morris v. McCarthy*, 825 F.3d 658 (D.C. Cir. 2016). But "[a]n employee cannot maintain the same action in both forums," and must instead "exhaust [his] administrative remedies in the forum where [his] complaint or appeal was first filed." *Rodgers*, 139 F. Supp. 3d at 71 (citations omitted).

"Generally, decisions of the MSPB 'are reviewed in the Federal Circuit,'" but an "exception is made for 'mixed cases' brought before the MSPB that allege adverse employment action along with allegations of discrimination." *Bowe-Connor v. McDonald*, No. 15-cv-231, 2016 WL 5675854, at *2 (D.D.C. Sept. 30, 2016) (citation omitted). Thus, an employee who "pursues a mixed case appeal with the MSPB . . . may appeal an adverse decision by filing suit in federal district court." *Rodgers*, 139 F. Supp. 3d at 71 (citing 5 U.S.C. § 7703(b)(2)).

### B. Factual and Procedural Background

The instant case arises out of facts and allegations recounted in significant part by the D.C. Circuit in *Hornsby v. Watt*, No. 17-5001, 2017 WL 11687516 (D.C. Cir. Nov. 14, 2017), which affirmed the decision of another court in this District that dismissed Plaintiff's previous, related case filed in 2016. *Id.* at *1. In that case, the D.C. Circuit recounted:

> According to the complaint, Richard Hornsby became the Chief Operating Officer of the Federal Housing Finance Agency ("FHFA") on December 5, 2011. On April 25, 2014, he settled an employee's human resources complaint against another employee, Jeffrey Risinger. Three days later, Risinger falsely reported to FHFA's lawyers and its Office of Inspector General that he had heard Hornsby make kidnapping, physical harm, and death threats against Hornsby's previous supervisor, Edward DeMarco. That same day, Hornsby denied making these threats but was escorted from his workplace and placed on paid administrative leave, which included his salary and benefits. On April 30, 2014,

Hornsby was arrested for three felony charges at his home by agents dressed in assault gear.  He remained overnight in the D.C. jail.  Soon after a senior FHFA official leaked news of Hornsby's arrest to several media outlets.  He remained on paid administrative leave during the pendency of his criminal proceedings, during which time FHFA offered him a settlement and threatened to place him on indefinite suspension.

On November 20, 2014, Hornsby was acquitted of the charges, which had been reduced to two misdemeanors.  Hornsby was "chagrined" that he was not immediately reinstated to his FHFA position.  Twenty-nine days after his acquittal the FHFA director, appellee Melvin Watt, issued a proposal to terminate his employment.  This decision was made final, effective March 21, 2015[.]

*Id.* (internal citations omitted).[1]

Plaintiff then appealed his termination to the MSPB, "challeng[ing] his removal on the substantive merits and also rais[ing] an affirmative defense of retaliation for his prior EEO activity."  Compl. ¶ 27.  In July 2016, the AJ issued an Initial Decision that reversed Plaintiff's termination but that also found that Plaintiff had failed to prove his claim of retaliation.  *Id.* ¶ 28.  On August 25, 2016, FHFA filed a Petition for Review of the AJ's Initial Decision with the MSPB.  *Id.* ¶ 30.  Plaintiff then filed a response opposing the FHFA's Petition for Review of the Initial Decision, in which he contended that the MSPB should deny the agency's petition because the AJ "made no erroneous findings of material fact, or erroneous applications of law."  Ex. 1 to Def.'s Mem., Appellant's Resp. in Opp'n to Agency's Pet. for Review of Initial Decision ("Pl.'s Response to Pet. for Review") at 9, ECF No. 8-2.  But because the MSPB did not have a quorum for over five years, the MSPB only issued a final decision on the FHFA's petition in April 2022.  Compl. ¶¶ 31–32.  Its decision of April 28, 2022 "revers[ed]" the AJ's Initial Decision and "order[ed] Mr. Hornsby's termination be reinstated," in addition to "affirming the AJ's determination that Mr. Hornsby had not proven the affirmative defense that his removal was the

---

[1] The Court has the "authority to judicially notice related proceedings in other courts." *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (citations omitted).

product[] of unlawful retaliation based upon his participation in EEO activity."  *Id.* ¶ 32.  In

particular, the Board noted:

> Neither of the parties has challenged the administrative judge's finding that the appellant failed to prove his affirmative defense of EEO reprisal, and we discern no reason to disturb this finding. . . . Because the appellant here failed to prove his initial burden that a prohibited factor played any part in the agency's decision, we do not reach the question of whether EEO reprisal was a but-for cause of that decision.

Ex. 2 to Def.'s Mem., MSPB Final Order at 4 n.5, ECF No. 8-3.

Plaintiff now seeks to challenge the MSPB's final decision in this Court and alleges that:

(1) in terminating his employment, Defendant retaliated against him in violation of Title VII of

the Civil Rights of Act of 1964, 42 U.S.C. § 2000e-3, and the Civil Service Reform Act, 5

U.S.C. § 2302(b); (2) the AJ and MSPB adjudicating Plaintiff's appeal failed to provide him with

interim relief, in violation of 5 U.S.C. § 7701(b)(2)(A); and (3) the MSPB's affirmation of the

agency's decision to terminate Plaintiff's employment was arbitrary, capricious, an abuse of

discretion, unsupported by substantial evidence, or otherwise not in accordance with the law.

Compl. ¶¶ 44–48.  Defendant filed a motion to dismiss or, in the alternative, a motion for

summary judgment, contending that the Court must first dismiss Plaintiff's retaliation claim for

failure to exhaust administrative remedies and then dismiss Plaintiff's remaining claims for lack

of subject-matter jurisdiction.  Def.'s Mem. at 1–2.  Plaintiff filed an opposition to Defendant's

motion, *see generally* Pl.'s Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J.

("Pl.'s Opp'n"), ECF No. 10, and Defendant filed a reply, *see generally* Def.'s Reply in Supp. of

Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Reply"), ECF No. 11.

Defendant's motion is therefore ripe for consideration.

### III.  LEGAL STANDARD

### A.  Administrative Exhaustion

"Government employees alleging discrimination in violation of Title VII or challenging personnel practices prohibited by the Civil Service Reform Act must exhaust administrative remedies before bringing their claims to federal court."  *Hamilton*, 666 F.3d at 1349 (citations omitted).  With respect to the CSRA, "exhaustion of administrative remedies is a jurisdictional prerequisite to suit."  *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996).  By contrast, "the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement."  *Dahlman v. Am. Ass'n of Retired Persons (AARP)*, 791 F. Supp. 2d 68, 76 (D.D.C. 2011) (quoting *Francis v. City of N.Y.*, 235 F.3d 763, 767–68 (2d Cir. 2000)).  The defendant "bears the burden of proving by a preponderance of the evidence that the plaintiff has failed to exhaust his administrative remedies" with respect to his Title VII claim.  *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 84–85 (D.D.C. 2014) (quoting *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 276 (D.D.C. 2011)).  Where the defendant meets this burden, "the burden shifts to the plaintiff to demonstrate that dismissal is not warranted."  *Id.* at 85.  But "[e]ven if [a] plaintiff has not properly exhausted his administrative remedies by failing to follow the highly technical requirements relating to mixed case filings, the failure to do so does not bar plaintiff from filing a complaint" and a plaintiff "may be excused from exhaustion requirements where the Court finds that there are equitable reasons for doing so."  *Broom v. Caldera*, 129 F. Supp. 2d 25, 29 (D.D.C. 2001) (citation omitted).

**B.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

"'[M]otions to dismiss for exhaustion . . . are more appropriately addressed as motions to dismiss for failure to state a claim under Rule 12(b)(6)' than for lack of jurisdiction under 12(b)(1)." *Bowe-Connor v. McDonald*, No. 15-cv-231, 2016 WL 5675854, at *2 (D.D.C. Sept. 30, 2016) (citation omitted), *aff'd and remanded sub nom. Bowe-Connor v. Shulkin*, No. 16-5289, 2017 WL 2373002 (D.C. Cir. Apr. 11, 2017); *see also Morris*, 842 F. Supp. 2d at 176 (analyzing motion to dismiss for failure to exhaust administrative remedies under Federal Rule of Civil Procedure 12(b)(6)).  *But see Fernandez v. Donovan*, 760 F. Supp. 2d 31, 34 (D.D.C. 2011) (reviewing motion under the Rule 12(b)(1) framework because CSRA exhaustion is jurisdictional, while also noting that a 12(b)(6) analysis is "required" if a statute does not contain "sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion" (citation omitted)).  Accordingly, the Court will apply the standard applicable to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) to Defendant's administrative exhaustion argument.[2]

---

[2] The Court may consider the exhibits attached to Defendant's motion—Plaintiff's response in opposition to the FHFA's Petition for Review and the MSPB's Final Order—in resolving the motion as a motion to dismiss.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice.").  Defendant is correct that the second exhibit, the MSPB's Final Order, was incorporated into Plaintiff's complaint by reference.  Compl. ¶¶ 2, 32–43.  The Complaint does not, however, refer to the first exhibit attached to Defendant's motion, Plaintiff's Response to the FHFA's Petition for Review of the AJ's Initial Decision.  Nevertheless, "even when the complaint does not expressly incorporate a document, the court may consider [in deciding a motion to dismiss] 'documents upon which the plaintiff's complaint necessarily relies,' including those 'produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'"  *Cogdell v. Murphy*, No. 19-cv-2462, 2020 WL 6822683, at *3 (D.D.C. Nov. 20, 2020) (quoting *Page v. Mancuso*, 999 F. Supp. 2d 269, 275 (D.D.C. 2013)).  Here, the Complaint necessarily relies on Plaintiff's response to the FHFA's Petition for Review because Plaintiff in part challenges the MSPB's affirmation of the agency's decision despite the arguments in that response.

To meet the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   In considering such a motion, a court must construe the complaint "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Further, a court need not accept a plaintiff's legal conclusions as true, *see id.*, nor presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

### C.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Federal courts are courts of limited jurisdiction, *see Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004), and must therefore address jurisdiction as a "threshold matter," *Steel*

---

Thus, whether the Court decides the motion under Rule 12(b)(1) or Rule 12(b)(6), the Court considers the same documents.  Moreover, because "12(b)(1) and 12(b)(6) motions are reviewed using similar standards," the Court's decision on this motion would remain the same even if it were to consider it under the standard applicable under Rule 12(b)(1).  *Fernandez*, 760 F. Supp. 2d at 35 n.1; *see also Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*, 540 F. Supp. 2d 231, 235 n.5 (D.D.C. 2008) ("Although resolution of a Rule 12(b)(1) motion requires 'closer scrutiny' than resolution of a Rule 12(b)(6) motion, since plaintiff's claims cannot survive Rule 12(b)(6) scrutiny, they would not withstand jurisdictional scrutiny." (internal citation omitted)).

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  To determine whether jurisdiction

exists, a court may "undertake an independent investigation to assure itself of its own subject

matter jurisdiction" and "consider facts developed in the record beyond the complaint."  *CFA*

*Inst. v. Andre*, 74 F. Supp. 3d 462, 465 (D.D.C. 2014) (quotation marks and citations omitted).

"Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance

of the evidence."  *Grell v. Trump*, 330 F. Supp. 3d 311, 316 (D.D.C. 2018) (citing *Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV.  ANALYSIS

Although Plaintiff argues that he did not waive his retaliation claim through an

"intentional relinquishment or abandonment of a known right," Pl.'s Opp'n at 1, a claim "may be

abandoned explicitly or by actions or inactions of the petitioning party," *Wilder v. Paulson*, No.

8-cv-1349, 2010 WL 11606948, at *6 (N.D. Ga. June 16, 2010) (citations omitted).  Plaintiff did

not file either a petition or cross-petition for review of the AJ's findings as to his retaliation

claim, stating instead in his response to the FHFA's Petition for Review that the AJ "made no

erroneous findings of material fact, or erroneous applications of law."  Pl.'s Resp. to Pet. for

Review at 9.  Through his inaction, Plaintiff effectively abandoned his retaliation claim, such

that the Court must now dismiss that claim due to Plaintiff's failure to exhaust his administrative

remedies before the MSPB.[3]  Moreover, because Plaintiff did not respond in his opposition to

---

[3] As Defendant acknowledges, a claim of retaliation is made as an affirmative defense before the MSPB.  Def.'s Reply at 3 & n.1.  In discussing the forfeiture of affirmative defenses, the D.C. Circuit has "note[d] the distinction between forfeiture and waiver, terms which 'though often used interchangeably by jurists and litigants . . . are not synonymous.'"  *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1107 (D.C. Cir. 2019) (quoting *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017)).  While forfeiture "is the failure to make the timely assertion of a right," waiver "is the 'intentional relinquishment or abandonment of a known right."  *Id.* (cleaned up and citation omitted).  Because the Federal Circuit has examined comparable cases as involving waiver as opposed to forfeiture, the Court here also discusses this

Defendant's arguments seeking dismissal of Plaintiff's remaining two claims due to the Court's lack of subject-matter jurisdiction, the Court considers those arguments conceded.  The Court must therefore decide whether to dismiss the remainder of Plaintiff's claims given the dismissal of Plaintiff's retaliation claim, which leads to this matter no longer being a "mixed case" that may be brought in federal district court.  In the interest of justice, however, the Court opts instead to transfer Plaintiff's non-retaliation claims to the Federal Circuit.

## A.  Abandonment of Retaliation Claim

Most instructive for the Court's consideration in evaluating Defendant's administrative exhaustion argument is *Lizut v. Dep't of Army*, 717 F.2d 1391 (Fed. Cir. 1983), in which the Federal Circuit declined to consider certain of the petitioner's claims due to his failure to exhaust administrative remedies.  *Id.* at 1395–96.  The petitioner in *Lizut* sought to appeal on several grounds a decision by the MSPB that upheld his removal from his position with the Department of the Army.  *Id.* at 1392.  The presiding official's initial decision concluded that the removal action should be reversed because the agency had been obligated to apply for disability retirement on the petitioner's behalf.  *Id.* at 1393.  But the presiding official also decided "that the board had no jurisdiction to consider the agency's refusal to process petitioner's early retirement request or the assertion that the agency wrongfully failed to promote petitioner from GS–12 to GS–13."  *Id.*  "Only the government appealed to the board from the presiding official's initial decision, urging reversal of the ruling that the agency was obligated to apply for disability

---

case as an issue of waiver.  Whether the Court considers this case as a matter of forfeiture or waiver, however, the result is the same: the Court cannot consider Plaintiff's claim or affirmative defense of retaliation when Plaintiff has not exhausted his administrative remedies on this issue before the MSPB.  *Cf. Keepseagle v. Perdue*, 856 F.3d 1039, 1053 (D.C. Cir. 2017) (concluding that appellant not only explicitly waived his claims before the district court, but that he also forfeited his claims because he did not raise those claims with the district court in the first instance).

retirement for petitioner in lieu of instigating a removal action," whereas the petitioner "did not appeal any part of the presiding official's decision." *Id.* Ultimately, the MSPB reversed the presiding official's decision, but "did not pass on the agency's refusal to process an application for voluntary retirement benefits or on the agency's failure to promote petitioner." *Id.* In his subsequent appeal of the MSPB's decision to the Federal Circuit, the petitioner contended in part that the MSPB should have considered "the agency's refusal to take steps necessary to process his request for early optional retirement and the failure to promote him to GS–13." *Id.* at 1395.

In declining to consider the petitioner's early optional retirement and promotion claims, the Federal Circuit explained that "[o]nly the government appealed to the board, raising the issue of the agency's obligation to file for disability retirement," whereas the petitioner "did not appeal any aspect of the presiding official's decision." *Id.* It highlighted: "In fact, in response to the agency's petition for review of the presiding official's decision, petitioner's attorney said: '[T]he Presiding Official made no erroneous interpretation of statute, regulation or prior case law with respect to the initial decision in this case.'" *Id.* at 1395–96. It would "undermine the board's authority," the Federal Circuit stated, if it were to "allow[] a party to withhold important issues from the board and later present them to [the] court." *Id.* at 1396; *accord Hays v. Postmaster Gen. of United States*, 868 F.2d 328, 330 (9th Cir. 1989). Accordingly, the petitioner had "failed to exhaust his administrative remedies with respect to his claims based on the agency's refusal to process his request for an early optional retirement and the failure to promote him to GS–13," and the Federal Circuit would not consider those claims. *Lizut*, 717 F.2d at 1396.

Other cases have followed comparable reasoning in finding that plaintiffs waived or abandoned their claims before the MSPB, such that they failed to exhaust administrative remedies. *See, e.g.*, *Uske v. U.S. Postal Serv.*, 56 F.3d 1375, 1378 (Fed. Cir. 1995) ("Uske did

not file an appeal of the AJ's denial of his whistle-blowing claim to the full board and we, therefore, will not now consider Uske's whistle-blowing argument." (citing *Lizut*, 717 F.2d at 1396)).  For example, in *Stephens v. Connley*, 842 F. Supp. 1457 (M.D. Ga. 1994), *aff'd*, 48 F.3d 537 (11th Cir. 1995) (unpublished table decision), the court determined that the plaintiff had abandoned his race discrimination claim before the MSPB.  *Id.* at 1459.  The plaintiff had raised the issue of race discrimination during the appeal of his removal by the Air Force to the MSPB, but also "offered no evidence [at the hearing before an administrative judge] that racial discrimination had played a role in the removal action."  *Id.* at 1458.  Though the administrative judge deemed the plaintiff's removal to be unreasonable, she "found that plaintiff 'did not offer any evidence in support of his claim that the agency took the removal action against him because of his race,'" and also wrote that the plaintiff "subsequently abandoned the claim."  *Id.* (citation omitted).  While the "Air Force petitioned the MSPB for review of the administrative judge's decision," the plaintiff "did not appeal the decision of the administrative judge as it related to racial discrimination."  *Id.*  The MSPB later reinstated the removal action against the plaintiff. *Id.*

        In its review of the MSPB's decision in *Stephens*, the district court set forth:

        It is clear that a discrimination claim may be abandoned during MSPB proceedings. There is no requirement, however, that the discrimination claim must be *explicitly* waived in order to find that the claim has been eliminated from the case.  The claim may be eliminated from the case either by explicit waiver or through the actions, or inaction, of the petitioning party before the MSPB.

*Id.* at 1459 (internal citations omitted and emphasis in original).  The court then listed a number of factors that other courts had considered in determining whether a discrimination claim had been eliminated from a case:

        For example, did the petition to the MSPB adequately set forth a claim of discrimination? Did the petitioner introduce evidence of discrimination before the MSPB?  Did the

> petitioner raise the issue of discrimination when seeking review of the administrative judge's decision?  Did the petitioner explicitly waive the discrimination claim in proceedings before the MSPB?  The factors set forth above, however, should not be considered an exhaustive list.  Further, no single factor is dispositive.

*Id.* (internal citations omitted).  Upon consideration of the record, the court stated, the plaintiff "did not pursue the claim of racial discrimination either before the administrative judge or the MSPB, given that he "failed to offer any evidence of discrimination in the hearings before the administrative judge and the MSPB."  *Id.* at 1459–60.

Another district court, citing the considerations laid out in *Stephens*, similarly found that a plaintiff had waived a claim of retaliation through his failure to exhaust his administrative remedies before the MSPB.  *See Bullock v. Widnall*, No. 95-cv-1031, 1997 WL 1876544, at *5 (M.D. Ala. Aug. 12, 1997).  In *Bullock*, an administrative law judge had "found that plaintiff failed to establish a *prima facie* case of retaliation because he produced no evidence that the agency terminated him as a result of his protected [EEO] activity."  *Id.* at *3.  Rather, "the only evidence before the ALJ concerning retaliation" was testimony from individuals stating that "their knowledge of the EEO complaint played no part in their actions concerning plaintiff's removal."  *Id.* at *5.  Moreover, "although the Air Force petitioned the MSPB for review of the ALJ's decision, '[p]laintiff . . . did not appeal the decision of the administrative judge as it related to . . . discrimination' *in a cross-petition.*'"  *Id.* at *6 (citation omitted and emphasis added).  The plaintiff "merely observed, in his response to the Air Force's petition for review, that the fact that he 'elected not to present evidence concerning reprisal, did not mean that such evidence did not exist;'" but the court did not consider this "somewhat coy" approach to be an appeal of the administrative judge's decision on the discrimination claim.  *Id.* at *6 & n.10 (citation omitted).  Thus, because "'discrimination must have been put forth substantively by the

plaintiff as a basis for the adverse employment decision,'" and the plaintiff failed to do so, he "effectively abandoned his retaliation claim before the MSPB." *Id.* at *6 (citation omitted).

Plaintiff disagrees that *Lizut* and other cases cited by Defendant are applicable and contends that abandonment or waiver would have required an intentional relinquishment of the claim, whereas Plaintiff "was expressly and actively pursuing his retaliation claim" as evident from "[t]he plain meanings of the words, the assembly of record evidence, and the inferences drawn in the briefs." Pl.'s Opp'n at 7–8, 10–12. These arguments are unavailing. Here, as in the cases described above, Plaintiff abandoned his retaliation claim when he did not challenge the AJ's determination that he had failed to prove such a claim. Like the petitioner in *Lizut*, Plaintiff urged the MSPB to deny the FHFA's Petition for Review "[b]ecause the Administrative Judge made no erroneous findings of material fact, or erroneous applications of law." Pl.'s Response to Pet. for Review at 9. Plaintiff later also stated, "[T]he agency has utterly failed to demonstrate the Administrative Judge committed any error in her findings in favor of appellant which would warrant overturning the Initial Decision, or even seriously reviewing it." *Id.* at 21. Though Plaintiff recounted the events leading to his removal, including his allegations about Mr. Risinger's possible motives for accusing him of making threatening statements, Plaintiff did not articulate, explicitly or impliedly, how the *agency's* termination of his employment constituted retaliation against him for his EEO activities. And indeed, upon review, the MSPB did not understand Plaintiff to be challenging the AJ's findings as to the retaliation claim either, stating, "Neither of the parties has challenged the administrative judge's finding that the appellant failed to prove his affirmative defense of EEO reprisal . . . ." MSPB Final Order at 4 n.5. Defendant here does not dispute that, unlike the *Stephens* and *Bullock* plaintiffs, Plaintiff presented his claim of retaliation to the AJ. But *Stephens* and *Bullock* also demonstrate that, to exhaust his

administrative remedies, a plaintiff must further bring the claim before the MSPB in appealing

the AJ's decision.  *See Stephens*, 842 F. Supp. at 1458; *Bullock*, 1997 WL 1876544, at *6.  Given

that Plaintiff did not "raise the issue of [retaliation] when seeking review of the administrative

judge's decision," *Stephens*, 842 F. Supp. at 1459, it would, as the Federal Circuit stated in *Lizut*,

"undermine the board's authority" if the Court allowed Plaintiff "to withhold important issues

from the board and later present them to this [C]ourt," 717 F.2d at 1396; *cf. Morris v. McCarthy*,

825 F.3d 658, 666–67 (D.C. Cir. 2016) ("A party may not allege on appeal as error an action

which he had induced [an administrative] tribunal to take[.]" (quoting *Bhd. of R.R. Trainmen v.*

*Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 380 F.2d 605, 609 (D.C. Cir. 1967))).

      Contrary to Plaintiff's insistence, *James v. FERC*, 755 F.2d 154 (Fed. Cir. 1985)

confirms rather than limits *Lizut*'s applicability to this case.  Pl.'s Opp'n at 11–12.  The Federal

Circuit in *James* "reaffirm[ed] that the petition for review does not limit the issues before [the]

court." 755 F.2d at 155.  But it also made clear that "[t]he issues or, as in *Lizut*, the claims, to be

heard in a particular case before th[e] court will be determined on the basis of whether the

circumstances of the particular case show that the petitioner or respondent knowingly abandoned

or waived claims or issues raised below."  *Id.*; *accord Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d

665, 668 (Fed. Cir. 1998).  The plaintiff in *Lizut*, the Federal Circuit confirmed in *James*, "in

response to the government's petition, *expressly* endorsed the presiding official's decision in all

respects" and "[a] waiver was, thus, effected as to the other claims."  *James*, 755 F.2d at 156

(emphasis in original).  As previously explained, the statements that Plaintiff made in his

response—whereby he "*expressly* endorsed" the AJ's decision—make this case much like *Lizut*,

and *James* does not counsel a different result.  *Id.* (emphasis in original).

Nor does Plaintiff's argument in reliance on *Evono v. Reno*, 216 F.3d 1105 (D.C. Cir. 2000) fare better.  Plaintiff contends that he did not waive his retaliation claim given that, in *Evono*, the D.C. Circuit "clearly declared that 'the language of waiver' must be present and that waiver cannot be presumed based on ambiguous statements."  Pl.'s Opp'n at 8 (quoting *Evono*, 216 F.3d at 1109).  But Plaintiff's statements seeking affirmation of the AJ's initial decision were not ambiguous.  In addition, the situation in *Evono*—wherein the district court had dismissed the plaintiff's discrimination claims, "rul[ing] that he had waived his right to pursue his discrimination claim in court before exhausting his administrative remedies" but could refile after exhausting his remedies before the MSPB—differs from that here.  216 F.3d at 1107 & n.5.  According to the government in *Evono*, the plaintiff had made a "statement in the MSPB proceeding that he was not pursuing in the district court the full 'mixed case' that was pending before the MSPB," and had "attempted to split his claims, keeping his discrimination claims in the MSPB[.]"  *Id.* at 1108.  The D.C. Circuit found that the district court had erred "[t]o the extent that the district court ruled that [the plaintiff] waived his right to sue in district court on the basis of his *pro se* statements to the MSPB suggesting that the relief he sought in court differed from the relief sought in administrative proceedings."  *Id.* at 1106–07.  But the question here is a substantively different one from that in *Evono*: it is not whether Plaintiff waived his right to proceed in court before he exhausted his administrative remedies, but whether Plaintiff waived a claim before the MSPB such that he failed to exhaust his administrative remedies.  This difference renders *Evono* less analogous to this case than *Lizut*,[4] and *Lizut* weighs in favor of finding that Plaintiff knowingly abandoned his retaliation claim.

---

[4] Plaintiff also relies on *Bolton v. Colvin*, 674 F. App'x 282 (4th Cir. 2017), but *Bolton* likewise involved issues dissimilar to those here.  *See id.* at 287–90.

There are, however, two cases upon which Plaintiff reasonably relies or could have relied, and the Court addresses each of these in turn.  First, in *Rodgers*, another court in this District rejected the government's argument that the plaintiff had "abandoned her Title VII claims when she failed to object to the ALJ's Initial Decision."  139 F. Supp. 3d at 77.  The court reasoned that "[n]either the statute nor accompanying regulations require the employee to file a petition for review of the ALJ's Initial Decision prior to proceeding in federal court."  *Id.*  Thus, in contending that the plaintiff "should have filed a petition for review of the ALJ's decision, or alternatively, should have alerted the ALJ that she overlooked the Title VII claims," the Department of Labor was "seek[ing] to read in a requirement that is simply not there."  *Id.*  Accordingly, the court stated, the Department of Labor "fail[ed] to demonstrate that [the plaintiff] expressly disclaimed her intention of pursuing her Title VII claims further . . . ."  *Id.*

But certain facts distinguish this case from *Rodgers*.  Most importantly, Plaintiff here expressly endorsed the AJ's decision and, as illustrated by the Federal Circuit caselaw, knowingly waived his retaliation claim.  Moreover, in *Rodgers*, "[n]either party filed a petition for review of the ALJ's Initial Decision," 139 F. Supp. 3d at 73; the plaintiff put forward that, due to the agency's misconduct and failure to provide her with discovery, "any attempt to appeal the ALJ's decision would have been futile," *id.* at 77.  By contrast, Plaintiff did submit a filing in response to the FHFA's Petition for Review—and he used that filing to endorse the AJ's decision without reservation.  *See* Pl.'s Resp. to Pet. for Review at 9.  To be sure, the Federal Circuit and other district court caselaw above does not cite any specific statute or regulation requiring that a plaintiff file a petition or cross-petition to exhaust his administrative remedies, and relies instead on the practical concerns raised by allowing a plaintiff to raise a challenge in federal court to an AJ's decision that he did not first bring on appeal to the full MSPB.  But the

Court agrees that such concerns are compelling.  And although the Federal Circuit's decisions are not binding on this Court, the Court will nonetheless accord appropriate deference to its caselaw on the requirements for administratively exhausting remedies before the MSPB.  *See Horn v. U.S. Dep't of Army*, 284 F. Supp. 2d 1, 8 n.10 (D.D.C. 2003) ("The Court notes that deference to the Federal Circuit is warranted in this area as it is the court that has been vested by Congress with original jurisdiction over MSPB appeals involving non-discrimination issues.").

Plaintiff might object, however, to the premise that his retaliation claim had been withheld from the MSPB when the MSPB explicitly acknowledged in its Final Order that Plaintiff had brought the retaliation claim before the AJ.  As support, Plaintiff might have cited *Trammel v. Brown*, No. 94-cv-149, 1995 WL 708666 (N.D. Ill. Nov. 30, 1995), where the court found that the plaintiff had exhausted her administrative remedies as to her race discrimination claim because the MSPB adopted the administrative judge's findings about the race discrimination claim.  *Id.* at *3.  In *Trammel*, an administrative judge reversed the plaintiff's removal by the Department of Veterans Affairs ("VA") on a number of grounds, but found that the plaintiff had not established a connection between her race and the removal action.  *Id.* at *2.  The VA sought review of the initial decision from the MSPB, but the plaintiff did not file a petition or a cross-petition for review on the race discrimination claim because she obtained the relief she sought on her other claims.  *Id.*  The MSPB then reversed the initial decision.  *Id.* Neither the plaintiff nor the VA had specifically raised the race discrimination issue on the review, but the MSPB stated in a footnote, "We adopt the administrative judge's finding that the appellant had failed to show racial discrimination."  *Id.*  When the plaintiff eventually brought suit in the court, she raised a claim of race discrimination, but the defendant argued in part that she had not exhausted her administrative remedies because she did not file a petition for review

or a cross-petition that permitted the MSPB to consider the race discrimination claim.  *Id.* at *3.
The court did not reach the issue, however, because it stated that the MSPB had explicitly
adopted the administrative judge's initial decision on race discrimination.  *Id.*  The court
concluded that this was sufficient to exhaust the plaintiff's administrative remedies.  *Id.*

      In this case, the MSPB stated in a footnote in its Final Order: "Neither of the parties has
challenged the administrative judge's finding that the appellant failed to prove his affirmative
defense of EEO reprisal, and we discern no reason to disturb this finding."  MSPB Final Order at
4 n.5.  But it then also noted later in that same footnote that "the appellant here failed to prove
his initial burden that a prohibited factor played any part in the agency's decision[.]"  *Id.*  The
question given *Trammel*, then, is whether the Court may conclude that the MSPB by this
language adopted the AJ's findings as to Plaintiff's retaliation claim, such that Plaintiff's
administrative remedies were in fact exhausted.  The Court declines to make such a finding for
two reasons.  First, the MSPB's statements here did not clearly adopt the AJ's findings about the
retaliation claim as did the MSPB's statement in *Trammel*; the language in this case suggests
instead that the MSPB was acknowledging the AJ's findings but opting not to address them
further, given the parties' decisions not to raise the retaliation claim as an issue.  Second, "[t]he
purpose of the administrative exhaustion requirement is to preserve judicial resources and
provide the agency with notice and an opportunity to pursue an administrative resolution."  *Est.
of Rudder v. Vilsack*, 10 F. Supp. 3d 190, 196 (D.D.C. 2014) (citations omitted); *see also Brown
v. Marsh*, 777 F.2d 8, 15 (D.C. Cir. 1985) (explaining that the exhaustion doctrine's purpose is to
"giv[e] the agency notice of a claim and opportunity to handle it internally").  While the FHFA
and the MSPB may have had notice that Plaintiff at an *earlier* stage in the proceedings had a
retaliation claim, neither was put on notice by Plaintiff that he wished to continue to press his

retaliation claim before the MSPB even after the AJ's Initial Decision.  That was evidently not the MSPB's understanding of Plaintiff's case, based on its statements in its Final Order.  Thus, to now find that Plaintiff administratively exhausted his remedies would contradict the purpose of the exhaustion requirement.

In support of his argument, Plaintiff might also have drawn an analogy to the D.C. Circuit's caselaw regarding the need to appeal or cross-appeal to preserve a claim in the federal courts.  In *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016 (D.C. Cir. 2020), the D.C. Circuit explained that "[p]arties who win in the district court may advance 'alternative bases for affirmance' that are properly raised and supported by the record without filing a cross-appeal, even if the district court rejected the argument."  *Id.* at 1028 (quoting *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 741 (D.C. Cir. 1995)).  A party need only file a cross-appeal if "seeking to press arguments that would *change or modify the district court's judgment* to their benefit[.]"  *Id.* (emphasis added); *see also Jennings v. Stephens*, 574 U.S. 271, 283 (2015) (holding that, because defendant's "theory would neither have enlarged his rights nor diminished the State's rights under the District Court's judgment," he was not required to take a cross-appeal to argue it on appeal); *Singh v. George Washington Univ. Sch. of Med. & Health Scis.*, 508 F.3d 1097, 1100 (D.C. Cir. 2007) (deeming unnecessary a cross-appeal that "seeks only affirmance of the judgment, either on the grounds of the district court's latest opinion or on the basis of arguments that the district court rejected in various interlocutory rulings").  Plaintiff might therefore have argued that the Court should analogize to this caselaw on cross-appeals and conclude that his lack of cross-petition at the administrative level need not merit dismissal given that he sought only affirmance of the AJ's judgment.

The Court declines to do so.  If it were to follow the requirements as set out in those cross-appeal cases, the Court would lack the information to determine whether, if he had pressed the retaliation claim further by filing a cross-petition, Plaintiff would have sought to "change or modify" the AJ's judgment.  *Shatsky*, 955 F.3d at 1028.  Neither party has submitted to the Court Plaintiff's original appeal to the AJ, thus leaving unanswered the question of whether Plaintiff may have, in arguing retaliation, sought different, additional relief than that granted by the AJ's Initial Decision.  Without these facts, the Court is not in a position to find *sua sponte* that the D.C. Circuit's caselaw on cross-appeals advises a different outcome than that here.  And in the absence of instruction from the D.C. Circuit on the specific issue of waiver presented here, the Court relies on the Federal Circuit's guidance as explained above.

Plaintiff does not raise any equitable considerations that would excuse his failure to exhaust his administrative remedies.  Nor does the Court find that potential equitable considerations identified by other courts apply in this case.  *See Broom*, 129 F. Supp. 2d at 29–30 (collecting cases and listing equitable considerations such as a plaintiff's "intelligence and familiarity with the process" and an agency's actions or notice of a plaintiff's claims).  Accordingly, because Plaintiff has not exhausted his administrative remedies with respect to his retaliation claim, that claim must be dismissed from this case.

## B.  Remaining Claims

Having dismissed Plaintiff's retaliation claim, the Court turns to Plaintiff's two remaining claims: Plaintiff's claim alleging an unlawful failure to provide him with interim relief and his appeal of the MSPB's Final Order.  Plaintiff does not respond in his opposition to Defendant's argument that the Court should dismiss these two remaining claims for lack of subject-matter jurisdiction.  The Court may therefore deem the argument to be conceded.  *See Hill v. Garland*,

No. 19-cv-3389, 2021 WL 965624, at *6 (D.D.C. Mar. 15, 2021) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)); *accord Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012), *aff'd*, No. 12-5084, 2012 WL 3055990 (D.C. Cir. July 18, 2012).  But even if Plaintiff did not concede the argument, Defendant is correct that the Court could dismiss the remaining two claims because, without Plaintiff's retaliation claim, this case is no longer a mixed case and the Federal Circuit has exclusive jurisdiction.  *See, e.g.*, *Blake v. Dep't of the Air Force*, 794 F.2d 170, 172–73 (5th Cir. 1986) (concluding that, because "racial discrimination was eliminated as an issue in this case at both the MSPB level and the district court level," the district court lacked subject-matter jurisdiction and the Court of Appeals for the Federal Circuit had exclusive jurisdiction); *Henry v. Peake*, No. 8-cv-6829, 2009 WL 4729932, at *6 (S.D.N.Y. Dec. 10, 2009) ("When the original claim of discrimination is eliminated from a case, the Federal Circuit has exclusive jurisdiction." (citing cases)); *Stephens*, 842 F. Supp. at 1459–60.

In the interest of justice, however, the Court will instead transfer Plaintiff's remaining, non-retaliation claims to the Federal Circuit, pursuant to 28 U.S.C. § 1631, rather than dismiss the claims.  *See, e.g.*, *Hays*, 868 F.2d at 331 (remanding case to consider whether transfer to Federal Circuit would be in interest of justice); *Afifi v. U.S. Dep't of Interior*, 924 F.2d 61, 64 (4th Cir. 1991).  Not only could these claims have been brought at the Federal Circuit at the time Plaintiff filed his complaint here, *see* 28 U.S.C. § 1631; 5 U.S.C. § 7703, but considerations such as judicial economy and "a concern for . . . uniformity in federal personnel policy" weigh in favor of transfer rather than dismissal here, *Afifi*, 924 F.2d at 64.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 17, 2023                                                          RUDOLPH CONTRERAS
United States District Judge